**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-50701
_____


BRYAN L McCULLEY,

                    Plaintiff-Appellant,

versus

JTM INDUSTRIES, INC,

                    Defendant-Appellee.


Appeal from the United States District Court
For the Western District of Texas
(W-95-CV-273)

May 19, 1997

Before JOLLY, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

     Plaintiff Bryan L. McCulley ("McCulley") appeals the district court's grant of summary judgment in favor of Defendant JTM Industries, Inc.  McCulley also appeals the district court's striking of various documents he filed in opposition to JTM's summary judgment motion.  We affirm.

I

     [*]     Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

McCulley was an employee at JTM's Limestone Facility in Jewett, Texas. JTM hired McCulley in January 1987; he ultimately became the facility's full-time laboratory technician responsible for conducting daily tests to determine the composition of "bottom ash," "fly ash," and "scrubber sludge" at the facility.

McCulley's mother and stepfather, Linda and Frank Holt, were also employed at JTM's Jewett facility. Frank was plant manager of the facility from 1988 until June 7, 1993; Linda was the facility's office manager until March 31, 1993. JTM terminated Linda after it adopted a nepotism policy that precluded her from remaining in a position subordinate to her husband at the same facility.

After JTM terminated Linda, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR"). After receiving notice of Linda's EEOC complaint, JTM placed Frank on administrative leave and subsequently offered him a transfer to another position in the Atlanta area. Frank initially accepted the transfer, but later refused it and quit his job.[2]

After Frank left JTM's Jewett facility on June 7, 1993, several incidents of allegedly "disruptive behavior" by McCulley

---

[2] Both Linda and Frank Holt sued JTM alleging, *inter alia*, violations of the Age Discrimination in Employment Act of 1967 ("ADEA"). Specifically, the Holts alleged age discrimination, in violation of 29 U.S.C. § 621, and retaliation against Frank for Linda's EEOC complaint, in violation of 29 U.S.C. § 623(d). A jury rejected all of the Holts' claims against JTM, except for Frank's claim of retaliation. On appeal, we reversed Frank's judgment and dismissed the case with prejudice. *Holt v. JTM Indus., Inc.*, 89 F.3d 1224 (5th Cir. 1996), *petition for cert. filed*, 65 U.S.L.W. 3649 (U.S. Mar. 13, 1997) (No. 96-1472).

prompted JTM to place McCulley on a paid medical leave of absence lasting from August 23 to September 19, 1993. During this time, McCulley attended counseling sessions with Dr. Robert Adelman. On or about September 24, 1993, a few days after McCulley's return from leave, JTM placed him on a one-week suspension without pay for continued "disruptive behavior and negative work attitude." McCulley never returned to his position at JTM. In a letter dated October 4, 1993, McCulley notified JTM that he did not intend to return to work.

On August 21, 1995, McCulley filed suit against JTM alleging violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[3] McCulley opposed JTM's subsequent motion for summary judgment on his claims. He attached to his opposition his affidavit and those of Dr. Adelman and Jana Hart.[4] JTM moved to strike the affidavits.

On July 17, 1996, the district court granted JTM's motion to strike and granted summary judgment in JTM's favor. The district court denied McCulley's subsequent motion for a new trial and JTM's

---

[3]     Section 2000e-3 makes it unlawful for an employer to discriminate against an employee for exercising rights protected by Title VII. Linda Holt initially advanced claims of both gender and age discrimination to the EEOC. McCulley, like Frank Holt, contends that he was constructively discharged in retaliation for Linda's EEOC claim and subsequent lawsuit. McCulley's retaliation claim, as the district court observed, is apparently under the ADEA's retaliation provision, 29 U.S.C. § 623(d), rather than under § 2000e-3.

[4]     Hart is the director of the Creative Education Institute. She apparently administered the Learning Efficiency Test and the Kaufman Test of Educational Achievement to McCulley.

subsequent motion for attorney's fees. McCulley appeals.

## II

McCulley argues that the district court erred both in striking his summary judgment evidence and in granting summary judgment in JTM's favor. We review a district court's decision to strike summary judgment evidence for an abuse of discretion. *Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir. 1994). We review a district court's grant of summary judgment *de novo*, using the same standard as the district court. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Summary judgment is appropriate when the record reflects that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## A

McCulley challenges the district court's striking of his affidavit, Dr. Adelman's affidavit, and Hart's affidavit. We address each affidavit in turn.

### 1

The district court struck McCulley's affidavit after finding that it "directly contradict[ed] his deposition in that he had a remarkable recall of past events that he did not possess during the taking of his deposition." McCulley contends on appeal that the affidavit did not contradict his deposition testimony, but rather supplemented it. He argues that his nervousness at his first

-4-

deposition and his allegedly limited intelligence explain his inability to recall during his deposition even the most rudimentary factual predicates of his claim. He also argues that the statements in his affidavit merely restate information recorded in his diary and contained in documents previously filed with the EEOC.

These arguments are unpersuasive. McCulley presented no evidence that his purported diminished capacity affected his ability to testify by deposition. In fact, counsel for both parties made every effort to emphasize the solemnity of the proceeding. Moreover, even were McCulley as intellectually challenged or nervous as he now asserts, the district court would not be required as a result to excuse his failure to correct or review the otherwise incomplete answers he provided at his deposition. McCulley verified that he had read his testimony prior to signing the deposition transcript. In addition, McCulley's characterization of his affidavit as "supplementary" is optimistic when many of his answers purport to reflect knowledge of persons and events that, at the time of his deposition, he vigorously maintained he either did not know or did not recall.[5] Accordingly,

---

[5] For example, McCulley testified at his deposition that he did not remember or did not know when he began work at JTM, whether he continued working after Frank Holt left JTM, whether anyone ever threatened his job because of Frank's departure, or whether anyone ever threatened his job because of Linda Holt's EEOC claim. He also testified that he did not remember or did not know who Greg Perkins (McCulley's supervisor) was, who Lana Guthrie (a JTM employee who accused McCulley of slamming a file drawer) was, or what significance, if any, certain JTM employees had to his case.

Outside of the deposition room, however, McCulley's ability to recall

we find that the district court did not abuse its discretion in excluding McCulley's affidavit pursuant to Federal Rule of Civil Procedure 37(c).[6]

2

The district court struck Dr. Adelman's affidavit because it failed to comply with the requirements governing admissibility of expert testimony found in Federal Rule of Evidence 702. The district court also rejected McCulley's contention that Dr. Adelman's affidavit was admissible to show "notice" to JTM of available reasonable accommodations because the district court found nothing in Dr. Adelman's affidavit (or any other affidavit) to suggest that JTM had received it.

McCulley alleged that JTM sent him to see Dr. Adelman during his medical leave of absence. Dr. Adelman's report, dated September 20, 1993, purports to analyze McCulley's behavior and to

---

persons and events improved so dramatically that his affidavit simply cannot be deemed to reflect the kind of elaboration that qualifies as "supplementation" in the cases upon which McCulley relies. *See Dibidale of La., Inc. v. American Bank & Trust Co.*, 916 F.2d 300, 307 (5th Cir. 1990); *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988); *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980). Rather, McCulley's improved ability to recall persons and events is substantially different testimony warranting judicial skepticism. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996).

[6] The district court concluded that "[w]hether viewed as a deliberate deception or merely a failure to correct incorrect information, Plaintiff's affidavit is excludable under Rule 37(c)." Rule 37(c) provides that a party who, without substantial justification, fails to disclose information required by Rule 26(e)(1), may not use that evidence "at a trial, at a hearing, or on a motion." Fed. R. Civ. P. 37(c). Rule 26(e)(1) imposes a duty on a party to supplement disclosure "if the party learns that in some material respect the information disclosed is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1).
Although portions of McCulley's excluded affidavit relate to matters not addressed in his deposition testimony, consideration of these portions does not suffice to create an issue of material fact barring summary judgment for JTM.

-6-

suggest coping mechanisms. An affidavit stating only that the report was kept in the regular course of Dr. Adelman's business and that it was an exact duplicate of the original accompanied Dr. Adelman's report.

McCulley plainly submitted the report for its value as an expert opinion regarding his alleged disability and the accommodations, if any, that JTM should have provided to him. Despite this patent purpose, however, McCulley never even attempted to qualify Dr. Adelman as an expert in the district court. "[B]efore a district court may consider expert opinion evidence set forth in an affidavit or other evidentiary document offered in support of or in opposition to a motion for summary judgment, the court must find, among other things, that the evidence meets the requirements of Federal Rule of Evidence 702, namely, that the person who provided the evidence is 'qualified as an expert by knowledge, skill, experience, training, or education.'" *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 176 (5th Cir. 1990) (quoting Fed. R. Evid. 702), *cert. denied*, 510 U.S. 859, 114 S. Ct. 171, 126 L. Ed. 2d 131 (1993). That McCulley may have met the requirements of the business records exception to the hearsay rule in Federal Rule of Evidence 803(6) does not sufficiently support his arguments. Even if we accept McCulley's dubious assertion that he offered Dr. Adelman's report solely for its value as "notice" to JTM of available accommodations, we agree with the

district court that McCulley failed to provide any summary judgment evidence suggesting that the report was sent to or received by JTM at any relevant time before McCulley resigned.[7]  As a result, we conclude that the district court did not abuse its discretion in excluding Dr. Adelman's affidavit and the accompanying report.

3

The district court also struck Hart's affidavit and an accompanying report because Hart was not qualified as an expert as required by Rule 702.  For the same reasons explained above, we find that the district court did not abuse its discretion in excluding Hart's affidavit and report.[8]

B

The district court granted summary judgment in favor of JTM on McCulley's retaliation claim because McCulley failed to present sufficient evidence to demonstrate an issue of fact concerning either the existence of an adverse employment action or a causal connection between the "protected act" and the alleged adverse employment action.[9]  The district court further found that JTM

---

[7]     Even if JTM received Dr. Adelman's report before it received McCulley's resignation letter of October 4, 1993, proof of notice of the contents of the report would not preclude summary judgment for JTM.

[8]     McCulley does not advance his "notice" theory with respect to Hart's affidavit because Hart's report purports to have been written more than two months after McCulley sent his resignation letter to JTM.

[9]     Under both the ADEA and Title VII, a plaintiff establishes a prima facie case of retaliation by showing:  (1) that he engaged in activity protected by Title VII or the ADEA; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision.  *Shirley v. Chrysler First, Inc.*,

articulated non-retaliatory reasons for actions taken in regard to McCulley's employment, and that there was no evidence that these reasons were pretextual.[10]  Although we believe that the district court was correct in its assessment of the evidence, or lack thereof, supporting McCulley's retaliation claim, we affirm the grant of summary judgment in favor of JTM on the same ground that we rejected Frank Holt's retaliation claim after this appeal was filed.  *See Holt*, 89 F.3d at 1225-27.

In *Holt*, the related case addressing whether Frank Holt could assert a retaliation claim under 29 U.S.C. § 623(d) alleging JTM terminated him in retaliation for his wife Linda's ADEA claim, we explained:

> [W]hen an individual, spouse or otherwise, has not participated "*in any manner*" in conduct that is protected by the ADEA, we hold that he does not have automatic standing to sue for retaliation under § 623(d) simply because his spouse has engaged in protected activity.
> . . .
> Th[e] evidence does not establish that Frank participated in Linda's protected activities or that he opposed JTM's alleged discriminatory practice.  There is no evidence that Frank helped Linda prepare her charge or that he assisted in any way in its filing.  At best, Frank was a passive observer of Linda's protected activities.  As such, he does not have standing to sue for retaliation under § 623(d).

*Id.* at 1227 (emphasis in original).

---

970 F.2d 39, 42 (5th Cir. 1992).

[10]     The district court outlined the summary judgment evidence supporting JTM's assertion that McCulley's "outbursts" were frequent and disruptive.  The evidence was largely uncontroverted.  McCulley acknowledged temper control problems in his deposition and even the (excluded) Adelman report tends to support the affidavits submitted by JTM.

McCulley's retaliation claim fails for the same reason.  He neither alleged nor presented any summary judgment evidence suggesting that he "participated in any manner in an investigation, proceeding, or litigation" concerning his mother's claim.  29 U.S.C. § 623(d).  Furthermore, the record contains no evidence suggesting that he "opposed any practice" of JTM as it related to his mother's claim.  *Id.*  As we have held that § 623(d) does not confer "automatic standing" on family members, McCulley's retaliation claim cannot survive JTM's summary judgment motion. *Holt* binds this panel.[11]  Accordingly, we affirm the district court's grant of summary judgment in favor of JTM on McCulley's retaliation claim.

C

Under Title I of the ADA, an employer cannot discriminate against a "qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees . . . ."  42 U.S.C. § 12112(a).  A plaintiff may establish a claim of disability discrimination by presenting direct evidence of discrimination. *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir.),

---

[11]     Rather than point to evidence that he engaged in some protected activity, McCulley invites us to revisit the issue decided in *Holt*.  This we decline to do.  One panel of this court cannot overrule a prior panel's decision in the absence of an intervening contrary or superseding decision by this court en banc or the Supreme Court.  *Oncale v. Sundowner Offshore Servs.*, 83 F.3d 118, 119 (5th Cir.), *petition for cert. filed*, 65 U.S.L.W. 3432 (U.S. Dec. 16, 1996) (No. 96-568).

*cert. denied*, ___ U.S. ___, 117 S. Ct. 586, 136 L. Ed. 2d 515 (1996). Alternatively, a plaintiff may establish a prima facie case of discrimination in violation of the ADA by showing that: (1) he suffers from a disability; (2) he is qualified for the job; (3) he was subject to an adverse employment action; and (4) he was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *Id.* The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). *See also Ellison v. Software Spectrum*, 85 F.3d 187, 190-92 (5th Cir. 1996) (noting that impairment, standing alone, does not constitute disability unless it also substantially limits major life activity).

McCulley claims that his "learning disabilities and diminished mental capacities" constitute a disability under § 12102(2)(A). Such conditions, if established, would come within the definition of "impairment" under applicable EEOC regulations.[12] *See* C.F.R. § 1630.2(h) (adopting definition set forth in 34 C.F.R. § 104.3(I)(B)). McCulley also contends that he suffers from a speech impediment, a physical impairment that, if established,

---

[12] The only summary judgment evidence proffered by McCulley supporting his claim that he suffered from a learning disorder was Hart's (excluded) affidavit and report, compiled after McCulley left JTM. Although we agree that the district court properly excluded this evidence, we assume *arguendo* the existence of such an impairment to demonstrate the infirmities of McCulley's ADA claim.

would also come within the regulatory definition. *See id.*
(adopting definition set forth in 34 C.F.R. § 104.3(I)(A)).

The district court held that McCulley had failed to present
sufficient summary judgment evidence to demonstrate how either
alleged impairment affected one or more of the "major life
activities." Although, as the district court acknowledged,
McCulley argues that his (excluded) affidavit made such a showing,
we agree with the district court's assessment. The district court
explained:

> Plaintiff indicates that he lives with his parents and
> doesn't have a driver's license. There is nothing to
> indicate that this is a necessary result of his
> impairments. Plaintiff additionally indicates that he
> cannot qualify for most jobs in Limestone County. There
> is, again, no factual basis for this conclusion and
> nothing to indicate that Plaintiff has the abilities to
> draw that conclusion. Neither the [excluded] report of
> Jana Hart nor that of Robert Adelman supports these
> conclusions.

Furthermore, McCulley has not presented any evidence that might
demonstrate a connection between either impairment and his asserted
constructive discharge or on-the-job treatment (the alleged adverse
employment actions). Indeed, the only evidence in the record
addressing the link between JTM's actions and any potential
"impairment" of McCulley are the affidavits submitted by JTM that
suggest that it was McCulley's *deportment* that caused JTM to place
McCulley on medical leave, to curtail certain collateral
responsibilities, and eventually to suspend him without pay.
Personality traits such as poor judgment, quick temper or

irresponsible behavior are not themselves impairments. 29 C.F.R. § 1630.2(h) (app.). JTM concedes that McCulley repeatedly engaged in "disruptive behavior" and "outbursts," but McCulley has neither alleged nor offered any evidence suggesting that these incidents, to the extent that he does not deny that they ever occurred, were the result of either alleged impairment. Accordingly, we affirm the district court's grant of summary judgment in favor of JTM on McCulley's ADA discrimination claim.[13]

### III

Based on the foregoing, we find that McCulley's retaliatory discharge claim under the ADEA is barred by *Holt* and that he has failed to offer any evidence of a genuine issue of fact for trial on his ADA discrimination claim. We therefore AFFIRM the district court's grant of summary judgment in favor of JTM.

---

[13] In light of McCulley's failure to advance any plausible, supportable theory of adverse employment actions on the part of JTM, we agree with the district court that his constructive discharge claim))upon which both his ADEA and ADA claims relied))is without merit. *See Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).